Filed 9/23/13  In re Evan F. CA2/7

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SEVEN

| | |
|---|---|
| In re EVAN F., a Person Coming Under the Juvenile Court Law. | B243861 |
| | (Los Angeles County Super. Ct. No. CK88926) |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES, | |
| Plaintiff and Respondent, | |
| v. | |
| GREG F., | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of Los Angeles County.  Sherri Sobel and Stanley Genser, Juvenile Court Referees.  Affirmed.

Joseph T. Tavano, under appointment by the Court of Appeal, for Defendant and Appellant Greg F.

Nancy Rabin Brucker, under appointment by the Court of Appeal, for Defendant and Respondent Helen D.

John F. Krattli, County Counsel, James M. Owens, Assistant County Counsel, and Denise M. Hippach, Deputy County Counsel for Plaintiff and Respondent.

_____

Greg F. contends that there was insufficient evidence to support the juvenile court's findings with respect to him at the jurisdictional hearings concerning his son, Evan F. He also asserts that the court failed to make appropriate findings in conjunction with its removal orders and that there was not clear and convincing evidence of detriment if Evan F. were to be placed with him. We affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

Evan F. was born to Helen D. and Greg F. in May 2010. Evan F. became a dependent child of the juvenile court based on sustained allegations relating to both his parents. A full recitation of the history of this complicated matter is not necessary to resolve the appeal; we present only the factual and procedural history relevant to the issues presented on appeal.

### A. Domestic Violence

In June 2011 Greg F. and Helen D. were considering terminating their relationship and making custodial arrangements for Evan F. According to Helen D.'s declaration, on June 29, 2011, Greg F. came home and held Evan F. as he and Helen D. began discussing custody of Evan F. Greg F. was angry because Helen D. did not agree with his proposal. As he spoke, he "became angrier and more agitated. [His] hands began shaking while holding Evan." Evan F., who had been laughing before his father picked him up, began to cry. Greg F. did not react to his cries, continued to hold him, and would not permit Helen D. to hold him. Greg F. argued with Helen D., accused her of tape recording the conversation, pulled a recording device from his pocket, and then "got in [Helen D.'s] face, stood over [her] and was aggressively shaking the tape recorder in [her] face."

Greg F. told Helen D. that he was giving her ex parte notice and that she should appear at the Santa Monica courthouse the following Friday. He took Helen D.'s Blackberry from her, returned it to her briefly, and then seized it again. He again returned the Blackberry to her, but "continued to follow [her] in the apartment and would not let [her] get away from him."

2

Helen D. declared, "At one point, I sat down in a chair while [Greg F.] continued to berate me. [Greg F.] continued to get in my face and yell at me. [Greg F.] is approximately, 6 feet tall and weighs 180 lbs. I, on the other hand am 5'2" tall and weigh approximately 104 lbs. He is very intimidating. I was terrified. The Respondent's hands were still shaking while holding Evan. I repeated my request to hold Evan and [Greg F.] ignored me. [Greg F.] continued to stand over me. [¶] [Greg F.] grabbed both my Blackberry and my cell phone (which had been in my pocket) from me. I tried to grab both from him and in the process, [Greg F.] scratched my hand and grabbed my wrist, leaving bruises on my wrist which appeared the next day, June 30, 2011. I said to [Greg F.], you are scaring me. Please leave Evan with me and go for a walk. [Greg F.] demanded that Evan and I go for a walk with him. I refused. [Greg F.] stated that I was 'ruining this family.' [Greg F.], while holding Evan in one arm, started slamming his body against me and elbowing me. . . . When his body slammed into me, it hurt and I was fearful for my safety. I begged him to step away from me and asked for my phone. I said, 'I am going to call the police.'"

Helen D. was "extremely terrified" because Greg F. was becoming physically violent and also had control of all the telephones in the apartment. She began moving toward the patio door and asked Greg F. to give her the telephone. A security guard called out from downstairs, asking if she wanted him to call 911. Greg F. told him that there was nothing wrong, but Helen D. asked him to call the police. Greg F. then left, taking Evan F. and both of Helen D.'s telephones.

Greg F. was arrested on June 30, 2011, for inflicting corporal injury on a cohabitant (Pen. Code, § 273.5), and an emergency protective order was issued. Greg F. violated the protective order on July 5, 2011, by accompanying his mother to pick up Evan F. from Helen D., knowing that Helen D. would approach with the child. Helen D. sought a domestic violence restraining order on July 7, 2011. The court issued a temporary restraining order prohibiting Greg F. from contacting Helen D. or Evan F. until July 28, 2011.

The hearing on a permanent restraining order was set for July 28, 2011, but by that time dependency proceedings had commenced; accordingly, the family law court referred the restraining order issue to the juvenile court. In August 2011, the juvenile court considered Helen D.'s request for a permanent restraining order. In addition to describing the June incident, her declaration provided additional information about Greg F.'s behavior. According to Helen D., the June incident was not the first time that Greg F. had been violent with her. Previously, when she had attempted to discuss problems in their relationship, Greg F. had pushed her, insisting there were no problems. Greg F. had deliberately stricken her with Evan F.'s stroller "by pushing it into [her] in a violent manner in an effort to control [her] or [her] behavior." Greg F. also physically intimidated his other child, Evan F.'s half-brother.

Helen D. understood Greg F.'s violation of the emergency protective order as a message from Greg F. that he "wanted [her] to know that he was in control and could do what he wanted." This was in keeping with prior controlling behavior of Greg F., who acted differently in private than in public, had sudden and intense mood swings and bouts of anger, and blamed Helen D. for problems. In April 2011 Greg F. became enraged after Helen D. tossed a few pieces of mail at him while they cleaned off their dining room table. Greg F. angrily swept everything off the table onto the floor and threatened, "[I]f you do something to me you will get it back tenfold." Greg F. followed Helen D. went into the bedroom, and continued to scream at her in a threatening manner, including threats that if she did not agree to his proposed custody arrangements she would not see Evan F. In other incidents he called Helen D. degrading epithets, isolated her from her family and friends, and exercised complete control over Evan F., down to refusing to hand Evan F. to her. The juvenile court issued a one-year restraining order against Greg F. on August 18, 2011.

In addition to the above evidence, further information pertaining to the issue of domestic violence was admitted into evidence at the jurisdictional hearing. The security guard who intervened during the June incident declared that he had heard Helen D. "repeatedly requesting the man to return her telephone, give her her baby, and to leave.

4

She stated, 'Greg, give me my phone. Greg[,] I want you to leave now. Greg, give me my baby.' It was clear from the tone of her voice that she was very upset." He went to the apartment. Greg F. denied that there was a domestic dispute and refused to give Evan F. to Helen D. The guard saw Greg F. leave with Evan F. and two cellular telephones.

Evan F.'s maternal grandfather told Department of Family Child Services (DCFS) about his concerns about Greg F., whom he described as controlling and verbally abusive. Greg F. monopolized Evan F. and would not permit others to be with him. In May 2012, the maternal grandfather heard Greg F. screaming insults and obscenities at Helen D., and in late June, he was present soon after the incident of domestic violence for which Greg F. was arrested. He saw scratches on Helen D.'s hand. A friend of Helen D.'s detailed in a declaration Greg F.'s rages, isolating and controlling behavior, and his demeaning behavior toward Helen D., all of which occurred in front of Evan F.

### B. Helen D.'s Psychotic Episode

On July 8, 2011, Helen D. dropped Evan F. off a second story balcony and then jumped from the balcony herself. Evan F. sustained only bruising from the fall. Helen D., with a sprained ankle and displaying symptoms of psychosis, was taken into protective custody. Criminal proceedings were subsequently instituted against her; DCFS detained Evan F. and commenced dependency proceedings.

Helen D. was ultimately diagnosed with having undergone an acute psychotic episode. After approximately one week of hospitalization, she began to improve. As she recovered, Helen D. was able to advise her caregivers that she had been under the delusion that she and Evan F. had superhuman powers and were immune to physical injury; she understood that these were psychotic beliefs and became tearful at the risk she had posed to her son. She was discharged from the hospital on July 27, 2011; at the time of discharge, there was no evidence of psychiatric symptoms, and Helen D. was described as having "excellent insight and judgment regarding her situation. The psychotic delusions and ideas that le[]d to the jump off the balcony and other bizarre

5

events had clearly resolved and were no longer endorsed by the patient." Helen D.'s prognosis was "excellent," based on a series of factors: her insight into her condition; her willingness to comply with medication and treatment; her high level of functioning prior to the psychosis; the acute onset of her psychosis; and her rapid response to medication. Helen D. immediately began outpatient psychiatric care upon her discharge. She attended group therapy an average of 15 hours per week, fully complied with her protocol, and was described by her psychiatrist as an "enthusiastic participant" in treatment.

At all times after her release through adjudication and disposition, Helen D. was under psychiatric care and monitoring. Her psychiatrist advised the court that Helen D. was bipolar, and that she continued to have full insight into her condition; demonstrated dedication and strict adherence to her treatment plan; was stable with no signs or symptoms of mania or psychosis; and posed no foreseeable risk of harm to herself or others. He testified that Helen D. was "within the top five of compliant patients I've ever treated."

### C. Dependency Petitions and Initial Adjudications

Multiple dependency petitions were filed in this matter, and allegations were adjudicated at different times. Initially, DCFS filed a dependency petition on July 18, 2011, in which it alleged that Evan F. came within the jurisdiction of the juvenile court under Welfare and Institutions Code[1] section 300, subdivisions (a) and (b). Under subdivision (a), one allegation pertained to Helen D.'s conduct while psychotic, and a second allegation concerned the June altercation between Greg F. and Helen D. The petition included three subdivision (b) allegations: one concerning the abuse inflicted by and risk posed by Helen D. while she was psychotic; one describing Helen D.'s mental health history and failure to take her medication, as well as Greg F.'s failure to act to protect Evan F. given his knowledge of Helen D.'s mental health problems and her

---

[1]     All further statutory references are to the Welfare and Institutions Code.

6

noncompliance with the medication regimen; and one pertaining to the June incident of domestic violence.

In August 2011, DCFS filed a first amended dependency petition. The section 300, subdivision (a) allegation pertaining to domestic violence was rephrased to read: "The child's mother, Helen [D.] . . . and the child's father[] have engaged in altercations over the care and custody of the child and . . . on one occasion, June 30, 2011, a physical altercation resulted when the mother attempted to grab the child from the father's arms after father threatened to remove the child from mother's care and custody. Such violent conduct between the parents in the presence of the child endangers the child's physical health and safety and places the child at risk of physical harm." The subdivision (b) allegation concerning the balcony incident was amended to include language stating that Greg "knew of mother's mental and emotional problems and noncompliance with medication [and] failed to protect the child." A further allegation was added under subdivisions (b) and (d) stating that in 2009 Greg F. had sexually abused a non-related child, also endangering Evan F.

In November 2011, Helen D. pleaded no contest to an amended section 300, subdivision (b) allegation alleging that her mental health issues prevented her from safely meeting Evan F.'s needs. No allegations concerning Greg F. were adjudicated at that time. The court declared Evan F. to be described by section 300, subdivision (b).

The adjudication hearing on the allegations pertaining to Greg F. occurred in December 2011. By that time, only two allegations were before the court: the section 300, subdivisions (a) and (b) allegations concerning "altercations over the care and custody of the child," including the June incident. The court found that Evan F. was a child described by section 300, subdivision (a). The court dismissed the subdivision (b) count in the interest of justice.

7

D. Subsequent Petitions, Adjudication, and Disposition

In January 2012, DCFS filed a subsequent petition pursuant to section 342 in which it reasserted the sexual abuse allegations that had previously been dismissed without prejudice; this abuse was alleged as a basis for jurisdiction under section 300, subdivisions (b) and (d). DCFS filed a first amended subsequent petition in April 2012 in which it alleged two further bases for taking jurisdiction under section 300, subdivision (b): Greg F.'s alleged abduction of Evan F. and Greg F.'s "numerous mental and emotional problems," including "impu[l]sive, erratic and reckless behavior."

The juvenile court held a hearing in July and August 2012 that concerned disposition with respect to Helen D. and adjudication of the four pending allegations concerning Greg F. under section 300, subdivisions (b) and (d). After hearing testimony from the alleged victim of sexual abuse by Greg F., the court struck the two sexual abuse allegations under subdivisions (b) and (d) because it concluded that the evidence could not support them.

The court then proceeded on the remaining two allegations under section 300, subdivision (b). After receiving evidence, the court concluded that Evan F. had not been abducted and struck that allegation; but it found true as amended the allegation under section 342 that Greg F.'s demonstrated numerous mental and emotional problems, including, but not limited to, impulsive, erratic, and reckless behavior, brought Evan F. within the jurisdiction of the juvenile court under section 300, subdivision (b). The court declared Evan F. a dependent child.

At disposition, Greg F. did not request that Evan F. be placed with him, only that he have unmonitored visitation; or, in the alternative, that any monitored visits occur at a reasonable location. The court found by clear and convincing evidence that return of Evan F. to his parents would create a substantial risk of danger to his physical or emotional well-being and that no reasonable means existed to protect him without removal from his parents' custody. Helen D. was given unmonitored visitation for Evan F., including overnights in the home of Evan F.'s caregivers; she was also ordered

8

to continue all her services and psychiatric treatment. The court ordered a psychological evaluation of Greg F. and monitored visitation. Greg F. appeals.

## DISCUSSION

### I.    Sufficiency of the Evidence Pertaining to Jurisdiction

The juvenile court sustained allegations concerning Evan F. under section 300, subdivision (b) due to Helen D.'s mental health problems, and under section 300, subdivisions (a) and (b) due to Greg F.'s conduct. Greg F. argues on appeal that there was not sufficient evidence to support the court's findings under section 300, subdivisions (a) and (b) based on his conduct. DCFS argues that the sufficiency of the evidence to support these two findings is nonjusticiable because even if the court's findings on the counts with respect to Greg F. were not supported by substantial evidence, the juvenile court would nonetheless maintain jurisdiction over Evan F. because of the unchallenged finding under section 300, subdivision (b) pertaining to Helen D. (*In re I.A.* (2011) 201 Cal.App.4th 1484, 1491-1492.)

Greg F. responds that even when the juvenile court would nonetheless maintain dependency jurisdiction over a child, reviewing courts reach the merits of challenges to jurisdictional findings when those findings could be prejudicial to the appellant. (See, e.g., *In re Drake M.* (2012) 211 Cal.App.4th 754, 763.) He contends that he has been prejudiced by the court's findings because "the jurisdictional finding that Greg engaged in domestic violence with the mother and had mental health issues was the basis for its subsequent order refusing to place Evan with Greg. As such, and contrary to respondent's argument that Greg has presented no evidence to show how he was prejudiced[,] having the court refuse his request for custody of his son was clearly prejudicial to Greg."

We have reviewed the transcript of the adjudication and disposition hearing and find no indication that Greg F. requested custody of Evan F. but was refused. Even when the court was considering jurisdiction, Greg F.'s counsel made clear that he was trying

9

only to obtain visitation for Greg F. Counsel asked the court to "dismiss [the] (b)(3) allegation [the emotional problems allegation] so that we can work out some sort of reasonable visitation plan for the father." Later in the hearing, when the court turned to disposition, the court asked the parties for their views on removing Evan F. from both parents but allowing Helen D. to live in the house of Evan F.'s caregivers. Counsel for DCFS and Evan F.'s counsel were amenable to that idea. Greg F.'s counsel said, "Father would join with minor's counsel and County Counsel," and he only requested unmonitored visitation or monitored visitation in a reasonable location, as well as visits for Evan F.'s half-sibling.

Despite Greg F.'s failure to establish actual prejudice at disposition, because jurisdictional orders may be prejudicial in current or future dependency proceedings, we exercise our discretion to review the jurisdictional findings as to Greg F. (*In re Drake M.*, *supra*, 211 Cal.App.4th at p. 763.) We review the findings for substantial evidence. (*In re J.K.* (2009) 174 Cal.App.4th 1426, 1433.) Substantial evidence is evidence that is reasonable, credible, and of solid value. (*In re Yvonne W.* (2008) 165 Cal.App.4th 1394, 1401.) Under this standard of review, we examine the whole record in a light most favorable to the findings and conclusions of the juvenile court and defer to the lower court on issues of credibility of the evidence and witnesses. (*In re Savannah M.* (2005) 131 Cal.App.4th 1387, 1393; *In re Tania S.* (1992) 5 Cal.App.4th 728, 733.) We determine only whether there is any substantial evidence, contradicted or uncontradicted, that supports the juvenile court's order, resolving all conflicts in support of the determination and indulging all legitimate inferences to uphold the lower court's ruling. (*In re John V.* (1992) 5 Cal.App.4th 1201, 1212.)

The record contains substantial evidence to support the juvenile court's finding under section 300, subdivision (a). The record includes evidence that Greg F. went into a rage while holding Evan F. in June 2011, when Helen D. would not agree to his plan for custody of Evan F. Greg F. would not permit Helen D. to hold a now-crying Evan F.; he began making accusations and acting aggressively toward her and followed her around the apartment. He stood over Helen D., berated her, and seized her electronic devices.

10

The altercation became physical when Helen D. reached for Evan F. or her phone; as a result, Helen D. was afraid and scratched. A security guard overheard the altercation and witnessed its conclusion; he attempted to intervene to keep Greg F. from taking Evan F. away. This evidence was sufficient for the juvenile court to conclude that the parents had engaged in altercations over the care and custody of Evan F., and that on one occasion in June 2011, a physical altercation resulted when Helen D. attempted to grab him from Greg F. after Greg F. threatened to remove the child from her custody.

Greg F., however, identifies five pieces of evidence that were also before the juvenile court to support his claim that there was insufficient evidence to support the court's finding. First, Greg F. denied ever being violent with Helen D. and believed she had scratched herself to make it appear he was violent. Second, the police detective who met with a psychotic Helen D. in the hospital and investigated the incident in which Helen D. threw Evan F. from the balcony told DCFS in August 2011 that she questioned whether Helen D. had been psychotic and believed that she fabricated her allegation of domestic abuse in order to assert control over the family situation; she also related a number of observations of Helen D. during her psychotic break. Third, while Helen D. was under psychiatric hospitalization she denied that Greg F. had "laid a hand" on her. Fourth, in an August 2011 report, DCFS noted that it was not known whether there was domestic violence between Greg F. and Helen D. because Helen D. had provided conflicting statements while she was psychotic and the early stages of an increasingly acrimonious child custody conflict. The social worker wrote that it was "uncertain" whether Greg F. engaged in domestic violence: While Greg F. and Helen D. had an unhealthy relationship, she thought "the dynamics of domestic violence which include a pattern of power and control and a cycle of violence do not appear to be present." Fifth, Greg F. asserts that no criminal charges were filed against him as result of the June 2011 incident because Helen D. recanted what happened.

Greg F.'s denial of abuse, his explanation for the absence of criminal proceedings, the suspicions of a detective, and the uncertainty of a social worker are, interpreted most broadly, items of evidence that could have supported a conclusion contrary to the

11

conclusion the juvenile court reached. With respect to Helen D.'s statements, Helen D. did deny that Greg F. had ever laid a hand on her on July 11, 2011, in an interview conducted while she was floridly psychotic and "presented as somewhat disoriented, anxious, confused, with little affect." Even as she told the DCFS social worker that Greg F. had never laid a hand on her, she also said that he scared her. The social worker reported, "When asked why she would be afraid of father if he has never been physical with her, mother stated[,] 'I'm the type of person that needs to understand, to know things in advance.' When asked for clarification, mother just stared at [the social worker]." While this evidence tended to cast some doubt on Helen D.'s account of violence, the fact that she said that Greg F. had not laid a hand on her while in the midst of a psychotic episode, particularly in the context of her expression of fear of Greg F. and her incoherence in response to an attempt to reconcile her statements, does not preclude the court from crediting the detailed declaration that Helen D. signed before her hospitalization. Viewing the record most favorably to the juvenile court's order, if there is substantial evidence to support the order, we must uphold the order even if other evidence supports a contrary conclusion. (*In re Megan S*. (2002) 104 Cal.App.4th 247, 251.)

Greg F.'s final argument about the insufficiency of the evidence to support the juvenile court's findings under section 300, subdivision (a) is as follows: "Most important, there was no evidence Evan was ever harmed as a result of any alleged altercations between the parents." Section 300, subdivision (a) provides for jurisdiction over a child when the child "has suffered, or there is a substantial risk that the child will suffer, serious physical harm inflicted nonaccidentally upon the child by the child's parent or guardian." As section 300, subdivision (a) encompasses both situations in which serious physical harm has been inflicted and situations in which the child is exposed to a substantial risk of serious physical harm, Greg F.'s observation that Evan had not been harmed by the altercations between his parents does not establish any error in finding true the allegation made under this provision.

12

Accordingly, we conclude that substantial evidence supports the court's findings concerning the conduct of Greg F. under section 300, subdivision (a). Having determined that the juvenile court properly sustained one jurisdictional allegation relating to Greg F., we need not consider his challenge to the sufficiency of the evidence to support the other finding pertaining to him. (*In re Dirk S.* (1993) 14 Cal.App.4th 1037, 1045 [single basis for jurisdiction is sufficient to uphold juvenile court's order]; *In re Jonathan B.* (1992) 5 Cal.App.4th 873, 875 [where one jurisdictional finding is supported by substantial evidence, appellate court need not consider sufficiency of evidence to support other findings].)

## II. Removal Issues

Greg F. claims that the juvenile court erred at disposition when it removed custody of Evan F. from both parents pursuant to section 361, subdivision (c)(1), because at the time Evan F. was detained, he resided with Helen D. and not with Greg F. Instead, Greg F. contends that the court was required to proceed under section 361.2 and to make a finding that placement with Greg F. would have been detrimental to Evan F. in order to deny him custody.

Section 361.2, subdivision (a) provides, "When a court orders removal of a child pursuant to Section 361, the court shall first determine whether there is a parent of the child, with whom the child was not residing at the time that the events or conditions arose that brought the child within the provisions of Section 300, who desires to assume custody of the child. If that parent requests custody, the court shall place the child with the parent unless it finds that placement with that parent would be detrimental to the safety, protection, or physical or emotional well-being of the child." This provision does not impact the court's dispositional orders. Greg F. did not claim at disposition to have been a noncustodial parent, and the record reflects that Evan F. resided with both parents at the time the earliest event arose that brought Evan F. within the provisions of section 300: the June 2011 physical altercation between Greg F. and Helen D. Moreover, as discussed above, Greg F. has not demonstrated that he requested custody of Evan F. at

13

disposition, and in the absence of a request for custody the court had no obligation to place Evan F. with Greg F. (*In re A.A.* (2012) 203 Cal.App.4th 597, 605 ["It is the noncustodial parent's request for custody that triggers application of section 361.2, subdivision (a); where the noncustodial parent makes no such request, the statute is not applicable"].) Finally, Greg F. has not demonstrated that he objected to the juvenile court's alleged noncompliance with section 361.2 in the juvenile court, nor did we locate in our review of the record any such objection. Objections to noncompliance with section 361.2 are forfeited if not raised in the juvenile court. (*Id.* at p. 606; *In re Sabrina H.* (2007) 149 Cal.App.4th 1403, 1419.) Greg F. has not established any error at disposition.

## DISPOSITION

The judgment is affirmed.


ZELON, J.

We concur:


PERLUSS, P. J.


WOODS, J.